O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

YVONNE ALMAREZ,                        )      NO. EDCV 09-00140-MAN
                                       )
                Plaintiff,             )
                                       )      MEMORANDUM OPINION
        v.                             )
                                       )      AND ORDER
MICHAEL J. ASTRUE, Commissioner        )
of Social Security,                    )
                                       )
                Defendant.             )
_____)

        Plaintiff filed a Complaint on February 2, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").  On
March 11, 2009, the parties consented to proceed before the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The
parties filed a Joint Stipulation on September 22, 2009 ("Joint Stip."),
in which:  plaintiff seeks an order reversing the Commissioner's
decision and remanding the matter for further administrative
proceedings; and defendant seeks an order affirming the Commissioner's
decision.  The Court has taken the parties' Joint Stipulation under
submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on August 1, 2001. (Administrative Record ("A.R.") 103-04.) Plaintiff claims to have been disabled since April 27, 2001, due to carpal tunnel syndrome, shoulder and knee pain, arthritis, asthma, and a head injury. (A.R. 113-25, 130-31, 134.)

Plaintiff's application was denied initially and upon reconsideration (A.R. 21-22, 33-42), and she requested a hearing (A.R. 43). On May 22, 2003, plaintiff, who was unrepresented, testified at a hearing before Administrative Law Judge Jacqueline Drucker.[1] (A.R. 348-91.) In a September 26, 2003 written decision, Administrative Law Judge Drucker denied plaintiff's claim. (A.R. 26-32.) Plaintiff sought review. (A.R. 76.) On February 1, 2005, the Appeals Council granted review, vacated the September 2003 decision, remanded the case to an ALJ, and directed the ALJ to: (1) assess the credibility of plaintiff's subjective complaints; (2) address the consultative examiner's opinion regarding the amount of weight plaintiff could lift with her right upper extremity; (3) address the effect of plaintiff's mental impairment, including memory problems, on her residual functional capacity ("RFC"); and (4) if plaintiff was found disabled, consider the materiality of plaintiff's chronic alcohol abuse and conduct any further appropriate inquiry. (A.R. 88-89.)

---

[1]   Plaintiff had appeared for hearing initially on October 29, 2002, but that hearing was continued so that plaintiff could obtain counsel. (A.R. 334-37.) On March 31, 2003, plaintiff again appeared for hearing without counsel; the ALJ again continued the hearing to afford plaintiff an additional opportunity to obtain counsel. (A.R. 338-47.)

On May 4, 2005, plaintiff, who then was represented by counsel, appeared at a hearing before Administrative Law Judge Jay Levine (the "ALJ"). (A.R. 392-425.) In a September 22, 2005 decision, the ALJ denied plaintiff's claim. (A.R. 12-16.) The Appeals Council subsequently denied plaintiff's request for review of that decision. (A.R. 4-6.)

On February 8, 2006, plaintiff filed an action in this district court -- Case No. EDCV 06-00150-MAN -- seeking judicial review of the ALJ's September 22, 2005 decision. (A.R. 467.) On September 28, 2007, the Court reversed the ALJ's decision and remanded the case for further proceedings consistent with the Court's Order, as discussed *infra* (the "2007 Order"). (A.R. 467-84.) On October 15, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the 2007 Order. (A.R. 487.)

On April 30, 2008, plaintiff, who was represented by counsel, testified at a hearing before the ALJ. (A.R. 436-52.) On October 16, 2008, the ALJ again denied plaintiff's claim. (A.R. 429-35.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than

a mere scintilla but not necessarily a preponderance." <u>Connett v.</u> <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of</u> <u>Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). "Where the evidence as a whole can support either a grant or a denial, [a federal court] may not substitute [its] judgment for the ALJ's." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009)(citation and internal punctuation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Tommasetti v.</u> <u>Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); *see also* <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004)("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision"). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon

4

which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Tommasetti</u>, 533 F.3d at 1038; <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges that the ALJ failed to comply with the 2007 Order and properly consider the relevant medical evidence of record.  (Joint Stip. at 4.)  As discussed below, plaintiff contends that the ALJ erred in three respects.  First, plaintiff argues that the ALJ failed to comply with this Court's directive to consider and analyze adequately a "frequent rests" limitation and a lifting limitation imposed by Dr. Tariq Jamil, a consultative examining physician.[2] (*Id.* at 4-7.)  Second, plaintiff complains that the ALJ, without explanation, altered his prior RFC assessment in a manner unfavorable to plaintiff, *i.e.*, the ALJ omitted certain manipulation limitations he previously had found to be supported by the evidence of record.  (*Id.* at 7-8.)  Third, plaintiff contends that the ALJ misstated and ignored the medical expert's testimony in concluding that plaintiff did not meet or equal a listed impairment for a one-year period of time.  (*Id.* at 5.)

---

[2]   Plaintiff also notes that the ALJ failed to indicate whether he considered the lifting limitations expressed earlier by a different consultative examiner, Dr. Rocely Ella-Tamayo.  (Joint Stip. at 6.)

5

1

2  I.   <u>The ALJ Erred By Failing To Comply With, And Exceeding The</u>

3       <u>Scope Of, The 2007 Order</u>.

4

5       In the 2007 Order, the Court found that "[t]he ALJ offered no

6  reason for his implicit rejection of" two functional limitations noted

7  by Dr. Jamil.  (A.R. 476.)  Specifically, Dr. Jamil opined that

8  plaintiff is limited to lifting 10 pounds occasionally and frequently,

9  and standing and walking up to 4 hours in an 8-hour workday with

10 frequent rests.  (A.R. 297, 475.)  In his 2005 decision, the ALJ found

11 that plaintiff has the RFC to perform a limited range of light work

12 (A.R. 13), a category that requires the ability to lift up to 20 pounds

13 occasionally,[3] as well as sedentary work, a category that would encompass

14 Dr. Jamil's 10-pound lifting limitation.[4]  Although the ALJ acknowledged

15 Dr. Jamil's 10-pound lifting limitation (A.R. 14), the ALJ failed to

16 address it further and implicitly rejected it, given the light work RFC

17 assessment he made (A.R. 13-15).  The ALJ also found that plaintiff is

18 limited to walking no more than 4 hours out of an 8-hour workday,

19 without limitation.  (A.R. 13.)  Again, although the ALJ acknowledged

20 Dr. Jamil's "frequent rests" limitation (A.R. 14), the ALJ omitted it

21 from plaintiff's RFC without explanation and, thus, implicitly rejected

22 it (A.R. 13-15).

23

24      The Court concluded that the "ALJ's failure to address clearly and

25 either accept and reject" both the 10-pound lifting limitation and the

26 _____

27 [3]    *See* 20 C.F.R. § 416.967(b).

28 [4]    *See* 20 C.F.R. § 416.967(a).

6

"frequent rests" limitation imposed by Dr. Jamil constituted reversible error.  (A.R. 476-77.)  Accordingly, pursuant to the 2007 Order, the Court remanded the case "to allow the ALJ the opportunity to correct the above errors."  (A.R. 483.)  In its subsequent order of remand, the Appeals Council vacated the ALJ's decision and remanded the case "for further proceedings consistent with the" 2007 Order.  (A.R. 487.)

A.   The Law Of The Case And Rule Of Mandate Doctrines

In Sullivan v. Hudson, 490 U.S. 877, 109 S. Ct. 2248 (1989), the Supreme Court observed:

> Where a court finds that the [Commissioner] has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. . . .  Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.

Id. at 885-86, 109 S. Ct. at 2254-55 (citations omitted).  Citing the Supreme Court's observation and other precedent, district courts in the Ninth Circuit and elsewhere have applied the law of the case doctrine and the rule of mandate doctrine[5] in the social security context to find

---

[5]   Under the law of the case doctrine, the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.  See, e.g., United States v. Lewis, 611 F.3d 1172, 1179

reversal warranted when ALJ decisions exceed the scope of and/or contravene district court remand orders.

In Holst v. Bowen, 637 F. Supp. 145 (E.D. Wash. 1986), the ALJ found the claimant disabled for a closed period but not disabled thereafter. The claimant filed a federal action challenging the finding that he was not disabled for the subsequent period. The district court remanded the case for the consideration of several recent Ninth Circuit decisions. Id. at 145-46 & n.1. On remand, the ALJ proceeded through the full five-step sequential evaluation and, based on new evidence considered, found that the claimant had never been disabled. Id. at 146. On appeal, the district court observed that "[n]o one appealed that portion of the decision which held that claimant fully met the disability requirements for the closed period," and "[t]he unambiguous tenor of the order of remand necessarily assumed the validity of the finding that claimant was disabled" during the closed period as previously found by the ALJ. Id. at 146-47. The Court concluded that

(9th Cir. 2010); see also Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993)(under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case"). "[A]n inferior court 'is bound by the [appellate court's] decree as the law of the case; and must carry it into execution, according to the mandate.'" Vizcaino v. U.S. District Court, 173 F.3d 713, 719 (9th Cir. 1999)(quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S. Ct. 281 (1895)).

The rule of mandate doctrine is a variant of the law of the case doctrine. Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005). Under the rule of mandate doctrine, a lower court receiving a mandate "'cannot vary it or examine it for any other purpose than execution.'" United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1996)(citation omitted). "The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." Ischay, 383 F. Supp. 2d at 1214 (emphasis in original; citing Quern v. Jordan, 440 U.S. 332, 347 n.18, 99 S. Ct. 1139 (1979)).

"[t]he fact of [claimant's] disability during that period thereby became the law of the case and not subject to tampering in further administrative proceedings."[6]   *Id.* at 147.

In <u>Ruiz v. Apfel</u>, 24 F. Supp. 2d 1045 (C.D. Cal. 1998), an ALJ found that the claimant could not perform her past relevant work and, at step five after applying the grids, found that she was not disabled. After plaintiff sought judicial review, the district court remanded the case for two limited purposes, namely, for the ALJ to provide further findings with respect to his credibility assessment and determine the propriety of the use of the grids at step five.  On remand, following a supplemental hearing, the ALJ found that the claimant could perform her past relevant work and, thus, found her not disabled at step four.  *Id.* at 1047.  After again seeking judicial review, the claimant argued that the ALJ had erred in reviewing, and redetermining, the step four issue previously found in her favor, which had not been appealed.  The Court agreed, observing that the "remand order did not authorize the Appeals Council or the ALJ to revisit the previous step-four determination that plaintiff could not perform her past relevant work" and that:

---

[6]   The Court noted the Sixth Circuit's decision in <u>Mefford v. Gardner</u>, 383 F.2d 748 (6th Cir. 1967)(reversing an adverse decision by an ALJ following a remand), and quoted from it as follows:

> The Hearing Examiner was bound to obey the directions of the mandate without variation; and failure to follow the instructions therein given was error.  He failed to follow the instructions of the District Court, and, instead, introduced a mass of evidence with the purpose of holding, contrary to the decision of the District Court, that appellee was not suffering from a heart condition which prevented him from carrying out the work in which he was previously engaged.  In so doing, and in creating a new case, the Hearing Examiner committed error.

<u>Holst</u>, 637 F. Supp. at 147 (*quoting* <u>Mefford</u>, 383 F.2d at 756).

9

> [T]he Appeals Council order vacating the prior decision and
> remanding the case "for further proceedings consistent with
> the order of the court" [did not] suggest that review beyond
> the scope of the court's order was permitted or contemplated.
> There was, accordingly, no basis for the ALJ to review issues
> that had been determined in plaintiff's favor.

*Id.* at 1050 (record citation omitted).

More recently, in <u>Ischay</u>, *supra*, the district court reached a similar result through express application of the law of the case/rule of mandate doctrines. Following the first remand by the district court, the ALJ found that the plaintiff was limited to light exertional work, could not perform his past relevant work, and was not disabled at step five, because he had transferrable skills and/or could perform other jobs. The second remand was pursuant to a stipulation of the parties, and the district court's remand order directed the ALJ to obtain testimony from a vocational expert regarding the step five issue of vocational adjustment. 383 F. Supp. 2d at 1208. Following the second remand, the ALJ made new findings at the various steps of the sequential evaluation, finding at step four that the plaintiff was not disabled and concluding that he could perform his past relevant work. *Id.* at 1212. The district court held that, based on the rationale of <u>Holst</u>, *supra*, the law of the case and rule of mandate doctrines apply to cases remanded to the Commissioner for further proceedings.[7]  *Id.* at 1216-17.

---

[7]   The Court expressly rejected the Commissioner's argument that 20 C.F.R. § 404.983 -- which, like 20 C.F.R. § 416.1483, states that, on remand, "[a]ny issues may be considered by the administrative law judge

The district court found that the ALJ had violated the law of the case doctrine and exceeded the scope of the mandate by reconsidering his prior step one through step four findings.[8]  *Id.* at 1218-19.

Similarly, in <u>Calderon v. Astrue</u>, 683 F. Supp. 2d 273 (E.D.N.Y. 2010), the district court initially remanded based on error at step five, namely, due to a failure to state what weight a treating physician's opinion had been given on the step five issue of whether the claimant could perform other jobs in the national economy.  Following that remand, the ALJ removed certain previously-determined fine manipulation limitations from his RFC assessment without explanation and

---

whether or not they were raised in the [prior] administrative proceedings" -- precludes application of the doctrines.  <u>Ischay</u>, 383 F. Supp. 2d at 1217.  The Court noted that, as in the instant case, the Appeals Council remanded the matter to the ALJ "for further proceedings consistent with the order of the [federal] court," and 20 C.F.R. § 404.977(b) -- like 20 C.F.R. § 416.1477(b) -- states that ALJs may "take any additional action that is not inconsistent with the Appeals Council's remand order."  *Id.*  The Court reasoned that the language of the Appeals Council's remand order bound the ALJ to follow the district court's remand instructions, and thus, the law of the case doctrine was applicable.  *Id.*

[8]    Other recent decisions issued in this district court have reached similar conclusions -- *viz.*, that ALJ actions on remand violated the law of the case and/or rule of mandate doctrines -- including, *inter alia*: <u>Loeung v. Astrue</u>, 2010 WL 3365799 (C.D. Cal. Aug. 24, 2010)(although remand had been for the purpose of positing a new hypothetical to the vocational expert, the ALJ purported to "clarify" his prior RFC finding by changing it; however, this error was found to be harmless); <u>Gallagher v. Astrue</u>, 2009 WL 57033 (C.D. Cal. Jan. 6, 2009)(although remand was limited to step four and step five issues regarding plaintiff's past relevant work and alternate work, the ALJ made a redetermination of the plaintiff's severe impairments at step two, reassessed the plaintiff's RFC at step four, and eliminated moderate limitations previously found); <u>White v. Astrue</u>, 2009 WL 363620 (C.D. Cal. Feb. 13, 2009)(although remand was based on the ALJ's erroneous reliance solely on the grids at step five and was for the purpose of adducing vocational expert testimony, the ALJ rendered a less restrictive RFC finding on remand); <u>Coto v. Astrue</u>, 2008 WL 4642965 (C.D. Cal. Oct. 20, 2008)(the ALJ conducted "an entirely new RFC analysis" following a remand limited to two specific issues).

concluded at step four that the claimant could perform his past relevant work.  *Id.* at 276.  The Court found that the ALJ violated the law of the case doctrine by reconsidering the step four determinations made in prior decisions.  *Id.* at 276-77.  The Court concluded that it was irrelevant that, in the prior federal action, there had not been an explicit determination regarding the validity of the prior step four findings, because the law of the case doctrine applies to all matters decided directly or by necessary implication.  *Id.* at 276.  The Court observed:

> The point is particularly important in Social Security appeals because a district court is never called upon to address issues resolved in the claimant's favor; the claimant obviously cannot challenge such determinations, and the Commissioner cannot challenge them because they were made by him (or his delegate) in the first place. . . . [I]t follows from this procedural anomaly that when a district court passes judgment on, for example, an ALJ's step-five determination, it has implicitly affirmed the determinations at all prior steps.

*Id.* at 276-77.[9]

---

[9]    The Court rejected the Commissioner's argument that the law of the case doctrine cannot apply, because its operating procedures require an ALJ to redetermine all issues on remand.  The Court noted that the procedures state only that the ALJ must consider all *pertinent* issues de novo.  Calderon, 683 F. Supp. 2d at 277 (*citing* Soc. Sec. Admin., Hearings, Appeals & Litig. Law Manual (HALLEX) at § I-2-8-18 (2008)).  As the Court reasoned, when the Appeals Council remands a matter for further proceedings consistent with the federal court's order, the Appeals Council has limited the pertinent issues to those identified by the district court in its order of remand.  *Id.*

The foregoing authorities persuasively explain why the law of the case and law of mandate doctrines should apply in the Social Security context, and the Court agrees with, and adopts, their reasoning and rationales.[10]   Accordingly, the Court concludes that the question of whether the ALJ complied with the 2007 Order and/or exceeded its scope must be considered in view of these doctrines.

B.   <u>The ALJ's Modification Of Plaintiff's RFC To Remove Previously-Imposed Manipulation Limitations Exceeded The Scope Of The 2007 Order</u>

Plaintiff complains that the ALJ reassessed plaintiff's RFC to omit certain manipulation limitations that he previously found necessary. Specifically, in his September 22, 2005 decision, ALJ Levine found that plaintiff is precluded from work requiring, *inter alia*:   continuous keyboarding in excess of 2 hours per day total or greater than 15 minutes at one time; and greater than occasional lifting above shoulder level.   (A.R. 13.)   In his post-remand October 16, 2008 decision, however, ALJ Levine omitted these limitations without providing any explanation for their omission.   (A.R. 432.)   Defendant concedes that these limitations were omitted by the ALJ without explanation but dismisses the omission as inconsequential, arguing that the ALJ "was not bound by the prior ALJs' RFC assessments and was not required to explain

---

[10]   As the Court observed in <u>Ischay</u>, "[n]o published opinion of the Ninth Circuit has applied the doctrine of the law of the case or the rule of mandate to preclude ALJs from relitigating issues settled in district court orders."   383 F. Supp. 2d at 1215.   However, other Circuit Courts "have held that the doctrine of the law of the case and the rule of mandate apply to Social Security proceedings." *Id*. at 1216 n.7 (discussing Fourth, Sixth, and Seventh Circuit decisions).

that he found different manipulative limitations than the prior ALJs." (Joint Stip. at 12.)  Defendant, of course, overlooks that the *same* ALJ rendered both decisions in issue and, thus, omitted his *own* previously-imposed limitations (*see* A.R. 16 and 435), but in any event, even if decisions by different ALJs were involved, defendant's argument nevertheless would fail.

The Court, through its 2007 Order, remanded this matter for the proper consideration by the ALJ of two specific items of evidence -- namely, Dr. Jamil's lifting restriction and his "frequent rests" restriction -- and to afford the ALJ the opportunity to rectify his error in failing to consider these limitations properly and either reject them, if warranted, or incorporate them into plaintiff's RFC. The 2007 Order did not contemplate any revisiting and elimination of unrelated limitations[11] that the ALJ had found warranted by the evidence of record in his 2005 decision.  Any limitations found by the ALJ in his 2005 decision that favored plaintiff were not appealed; they were not disturbed by the 2007 Order and, thus, were implicitly affirmed, for the reasons outlined in <u>Calderon</u>, 683 F. Supp. at 276-77.  The Appeals Council, through its remand order, explicitly remanded the matter to the ALJ "for further proceedings consistent with the" 2007 Order, and thus, it limited the "pertinent" issues for determination on remand to the two issues set forth in the 2007 Order.

---

[11]   The need for the ALJ to clarify his consideration of Dr. Jamil's lifting limitations and properly consider Dr. Jamil's "frequent rests" limitation had nothing to do with the manipulative limitations found by the ALJ in his 2005 decision.  Put otherwise, because the manipulation limitations and Dr. Jamil's two limitations in issue were unrelated, whatever conclusion the ALJ reached on remand with respect to Dr. Jamil's two inadequately-addressed limitations would not have had any effect on the previously-determined manipulation limitations.

1    The ALJ, therefore, was not authorized to revisit his 2005 RFC

2    determination *in toto*, much less to render a new RFC finding that was

3    less favorable to plaintiff through the omission of the above-noted

4    limitations, which the ALJ previously had found to be warranted.  The

5    ALJ's decision to reconsider plaintiff's limitations entirely and to

6    remove certain limitations from her newly assessed RFC exceeded not only

7    the scope of the 2007 Order, in violation of the law of the case and

8    rule of mandate doctrines, but also the Appeals Council's order of

9    remand, in contravention of 20 C.F.R. § 416.1477(b).

10

11    The ALJ's error in this respect cannot be found to be harmless.  In

12    the hypothetical he posed to the vocational expert at the April 30, 2008

13    hearing, the ALJ omitted the manipulation limitations and stated only

14    the amended RFC and the light work category[12] he subsequently set forth

15    in his 2008 decision.  (A.R. 449.)  The vocational expert identified a

16    number of light, unskilled positions that a person with such an RFC

17    could perform.  (*Id.*)  When plaintiff's counsel asked the vocational

18    expert to include in the hypothetical the additional limitations of

19    "occasional fingering and occasional twisting, flexion extension and so

20    forth of the wrists," the vocational expert stated that the inclusion of

21    such limitations "would delete all those jobs," because they "all

22    require frequent to continuous use of the hands" and "handling."  (A.R.

23    450.)

24

25    Accordingly, the ALJ's error in exceeding the scope of the 2007

26

27    [12]    The hypothetical that the ALJ posed to the vocational expert was
premised on a claimant having the ability to perform light work; the ALJ

28    did not pose any hypothetical premised on the ability to perform only
sedentary work.

Order, by the omission of limitations previously found to be warranted, constitutes reversible error.

C.  <u>The ALJ Failed To Comply With The Directive Of The 2007 Order To Properly Consider The Two Additional Limitations Found By Dr. Jamil</u>.

In the 2007 Order, the Court concluded that the ALJ, by his assessment of an RFC for light work, implicitly had rejected Dr. Jamil's lifting limitation of 10 pounds occasionally and frequently.  The Court noted, additionally, the uncertainty engendered by the ALJ's subsequent reference to an RFC finding for a narrow range of light and sedentary work.  (A.R. 476.)  Regardless of that uncertainty, given the ALJ's failure to indicate what consideration (if any) he gave to Dr. Jamil's lifting limitation, the Court held that the ALJ's failure to address Dr. Jamil's lifting limitation, and clearly either accept or reject it, constituted error.  (A.R. 476-77.)  The Court concluded that the ALJ also had implicitly rejected Dr. Jamil's "frequent rests" limitation, given that the ALJ's RFC assessment failed to include this limitation. (A.R. 476.)  The Court held that the ALJ's failure to state *any* reason for the rejection of this portion of Dr. Jamil's opinion also constituted error.  (A.R. 476-77.)

The 2007 Order remanded the matter "to allow the ALJ the opportunity to correct the above errors." (A.R. 479, 483.)  The Appeals Council remanded the case to the ALJ "for further proceedings consistent with the [2007 Order]." (A.R. 487.)  Thus, on remand, the ALJ was obligated to address and rectify the two errors identified in the 2007

16

Order with respect to the lifting and "frequent rests" limitations found by Dr. Jamil.  The ALJ, however, has failed in both respects.

### 1.   Dr. Jamil's Lifting Limitation

At the 2008 hearing, Dr. Arthur Lorber, a medical expert, testified telephonically, without objection from plaintiff's counsel.  (A.R. 438-39.)  Dr. Lorber opined that, following an unspecified date in April 2002, plaintiff had the RFC to occasionally lift 20 pounds and frequently lift 10 pounds.  (A.R. 440-41.)  The ALJ did not ask Dr. Lorber why he had imposed a less restrictive lifting limitation than that imposed by Dr. Jamil or, previously, by Dr. Ella-Tamayo.[13]  (A.R. 440-42.)  The only lifting limitation utilized by the ALJ in the hypotheticals he posed to the vocational expert was the less restrictive limitation found by Dr. Lorber; the ALJ did not pose a hypothetical utilizing the more restricted lifting limitations assessed by Dr. Jamil or Dr. Ella-Tamayo.  (A.R. 449-50.)  In connection with the RFC assessment set forth in his 2008 decision, the ALJ relied only on, and adopted, Dr. Lorber's opinion, which included the above-noted lifting limitation consistent with light work -- a less restrictive limitation than that imposed by Dr. Jamil.  (*Compare* A.R. 432 with 441.)  The ALJ's decision did not mention Dr. Jamil's lifting limitation at all.  (A.R. 429-35.)

The 2007 Order, plainly, required the ALJ to accept or reject Dr.

---

[13]   In October 2001, Dr. Ella-Tamayo opined that plaintiff was restricted to lifting 5 pounds on the right side, due to her right shoulder arthritis, and 10 pounds frequently and 25 pounds occasionally on her left side.  (A.R. 223.)

Jamil's lifting limitation and, if the ALJ decided to reject it, to set forth adequate reasons for doing so in compliance with the governing legal standards.  The ALJ clearly contravened that directive.  The ALJ's 2008 decision ignores Dr. Jamil's lifting limitation entirely and fails to set forth *any* reason whatsoever for rejecting it.  The ALJ, thus, has repeated the same error that the 2007 Order directed be rectified.  The ALJ's disregard of the duty imposed by the 2007 Order to consider properly the lifting limitation imposed by Dr. Jamil and, if a rejection of that limitation was in order, to state legally valid reasons for rejecting Dr. Jamil's opinion, was improper under the rule of mandate doctrine.  The ALJ was not entitled to simply sidestep this aspect of the 2007 Order by ignoring it; his failure to even mention Dr. Jamil's lifting limitation is inexplicable.  The ALJ's failure to comply with this portion of the 2007 Order, therefore, clearly constitutes error.

On top of the foregoing reversible error, the ALJ committed an additional, and related, error.  By adopting the lifting limitation found by Dr. Lorber, a non-examining physician, the ALJ rejected the contrary opinions of Dr. Jamil and Dr. Ella-Tamayo, both consultative, examining physicians.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996)(emphasis in original); *see also, e.g.,* Morgan v. Comm'r. of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  The opinion of a non-examining physician normally is entitled to less weight than that of an examining physician, as the former has not had the opportunity to conduct an independent examination

of the claimant.  *See, e.g.*, <u>Ryan v. Comm'r. of Social Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008)("the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician"); <u>Pitzer</u>, 908 F.2d at 506 n.4 ("the conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician").  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996)(emphasis in original); *see also* <u>Andrews</u>, 53 F.3d at 1041 (when a nontreating source's opinion contradicts that of the treating or examining physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating or examining physician, the opinion of the treating or examining physician "may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record").

Given that Dr. Lorber's opinion regarding plaintiff's lifting capability contradicted that of two examining physicians and lacked any independent clinical support, the different conclusion drawn by the medical expert regarding plaintiff's lifting capability cannot constitute substantial evidence.  Moreover, and critically, the ALJ did not proffer a single reason, much less the requisite specific and legitimate reasons, for rejecting the opinions of the examining physicians and for deferring, instead, to the medical expert's opinion. The ALJ's failure to explicitly reject the opinions of Dr. Jamil and Dr. Ella-Tamayo regarding plaintiff's lifting limitations, and the ALJ's

19

failure to set forth specific and legitimate reasons for crediting Dr.
Lorber's opinion on this issue over the opinions of two examining
physicians, constitutes an independent reversible error above and beyond
his noncompliance with the 2007 Order.

2.   Dr. Jamil's "Frequent Rests" Limitation

The ALJ did note Dr. Jamil's "frequent rests" limitation in his
2008 decision but rejected the "frequent rests" limitation for the
stated reasons that:  Dr. Jamil failed to "specifically define" what he
meant by "'frequent rests' in terms of frequency or duration"; "there is
no demonstrated medical pathology which would specifically address the
need for such frequent breaks"; Dr. Lorber did not "specify the need for
any type of 'frequent rest'"; and the ALJ would limit plaintiff to
standing and/or walking for no more than one hour at a time, "at which
time it would be reasonable for the claimant to change position." (A.R.
433.)   None of these reasons is a tenable basis for rejecting Dr.
Jamil's "frequent rests" limitations.

The ALJ's reliance on Dr. Lorber's failure to include this same
limitation in his opinion is neither legitimate nor convincing.   Dr.
Lorber was not asked if any such limitation was appropriate or why he
disagreed with Dr. Jamil in this respect. (A.R. 440-42.)   A limitation
assessed by an examining physician cannot be rejected simply because a
non-examining physician did not mention such a limitation, as the
authorities discussed previously make clear.

The ALJ's second and third stated reasons are variants on the same

20

theme, namely, that Dr. Jamil's opinion was uncertain and the ALJ did not find "medical pathology" to support it.  Rather than serving as a basis for summarily dismissing Dr. Jamil's opinion, however, the ALJ's conclusions gave rise to a duty on his part to obtain clarification of Dr. Jamil's opinion.

In Social Security cases, the law is well-settled that the ALJ has an affirmative "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(ellipsis in original; *quoting* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Smolen v. Chater, 80 F.3d 1273, 1273 (9th Cir. 1279).  "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).  An ALJ can discharge his or her duty to develop the record "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150; *see also* Smolen, 80 F.3d at 1288; 20 C.F.R. § 416.1444 (stating that the ALJ may continue the hearing if he believes material evidence is missing, and may reopen the hearing at any time prior to mailing a notice of decision to receive new and material evidence); 20 C.F.R. § 416.1450(d)(providing that the ALJ may issue subpoenas on his own initiative or at the request of a party).

Thus, an ALJ has a duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts'" by procuring the necessary, relevant treatment records.  Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(citation omitted).  Thus, for example, in Smolen, supra, the Ninth Circuit held that the ALJ erred in rejecting the uncontroverted opinion of a treating physician on the ground, inter alia, that the physician did not explain the basis for his "yes-or-no" answers to questions.  The Ninth Circuit found that the ALJ had failed to meet his duty of stating clear and convincing reasons for rejecting the opinions, and "[i]f the ALJ thought he needed to know the basis of [the treating physician's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."  80 F.3d at 1288.  "Having failed to fully develop the record regarding the basis for [the physician's] opinions, the ALJ could not then reject those opinions -- which were uncontroverted and corroborated -- because they were given in response to leading, hypothetical questions."  Id.

Here as well, the ALJ's assertion -- that Dr. Jamil's "frequent rests" limitation was rejected, because Dr. Jamil failed to "specifically define" what he meant in this respect -- was not a clear and convincing reason for flatly rejecting the examining physician's opinion.  The ALJ's statement constituted an acknowledgment that he found Dr. Jamil's "frequent rests" opinion to be ambiguous.  If, as the ALJ expressly stated, he needed clarification as to the meaning of Dr. Jamil's opinion regarding "frequent rests," the ALJ should have obtained such clarification through the several means available to him for doing so.  Having failed to meet his duty to "conduct an appropriate inquiry,"

1  the ALJ's stated reason for rejecting Dr. Jamil's opinion was neither
2  clear not convincing.  <u>Smolen</u>, 80 F.3d at 1288.

3

4       The ALJ's related stated reason -- "there is no demonstrated
5  medical pathology documented anywhere in the record which would
6  specifically address the need for such frequent breaks" (A.R. 433) -- is
7  also not convincing.  The ALJ found that plaintiff has severe orthopedic
8  impairments and further, based on Dr. Lorber's opinion, that she cannot
9  walk for greater than 4 hours out of 8 and for no more than 1 hour at a
10 time.  (A.R. 431-32.)  When the ALJ asked Dr. Lorber the basis for this
11 limitation, Dr. Lorber cited to multiple items of objective medical
12 evidence, including:  a December 19, 2004 x-ray that demonstrated
13 degenerative arthritis in plaintiff's left knee (A.R. 237-38); a
14 September 17, 2003 MRI showing probable right anterior cruciate ligament
15 tear at the femoral attachment and a lateral meniscus tear (A.R. 332);
16 an August 14, 2003 medical note indicating that plaintiff knee surgery
17 performed on October 8, 1999, for a right lateral meniscus tear (A.R.
18 326); and March 23, 2005 x-rays that demonstrated plaintiff has
19 osteoarthritis in her knees (A.R. 329).[14]  (A.R. 441.)  Dr. Lorber opined
20 that he limited plaintiff's standing and walking based on osteoarthritis
21 in both of her knees.  (A.R. 441-42.)  Given the ALJ's adoption of Dr.
22 Lorber's limitation, the ALJ necessarily determined that the above-noted
23 medical evidence was demonstrative of the need for a stand/walk
24 limitation with a significant durational cap.  Hence, the ALJ's finding
25 that there is no "medical pathology" that might support Dr. Jamil's

26

27
───────────────
28 [14]  The March 23, 2005 x-rays also revealed mild arthritic changes in
both of plaintiff's hips.  (A.R. 330.)

23

1  opinion is not supported by substantial evidence.[15]

2

3        The ALJ's assertion that his allowance of a one-hour limit on

4  standing and/or walking prior to a change of position was a more

5  "reasonable" limitation than a "frequent rests" limitation also is not

6  a legitimate basis for rejecting Dr. Jamil's opinion.   An ALJ is not

7  permitted to substitute his own medical judgment for that of a

8  physician.   *See* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1102-03 (9th Cir.

9  1999)(finding that the ALJ erred in concluding that the claimant could

10 sit for two hours without changing position, based on the claimant's

11 testimony regarding a lengthy driving trip, when the treating physicians

12 and the medical expert opined that the claimant needed to change

13 position every half hour); *see also* <u>Clifford v. Apfel</u>, 227 F.3d 863, 870

14 (7th Cir. 2000)(observing that "'ALJs must not succumb to the temptation

15 to play doctor and make their own independent medical findings'"

16 (citation omitted); and finding that an ALJ's RFC finding that the

17 claimant could stand or walk for up to six hours, notwithstanding a

18 treating physician's opinion that the claimant's knee arthritis limited

19 her ability to stand or walk on a sustained basis, was an erroneous

20 substitution by the ALJ of his medical judgment for that of the

21 physician).   While the ALJ apparently did not pluck this one-hour

22 limitation out of thin air and premised it on Dr. Lorber's opinion, as

23 discussed herein, the ALJ has not stated any tenable basis for rejecting

24 Dr. Jamil's opinion.   Hence, the ALJ's rejection of Dr. Jamil's opinion

25

26 [15]   Dr. Jamil stated that he had reviewed a December 19, 2001 x-ray of
   plaintiff's knees, which showed mild degenerative arthritis. (A.R. 297;
27 *see also* A.R. 268.)   The subsequent x-rays and the MRI on which Dr.
   Lorber relied were consistent, and thus, they did not detract from Dr.
28 Jamil's opinion.

24

in favor of Dr. Lorber's opinion was improper and did not serve as a legitimate reason for disregarding Dr. Jamil's opinion.

Significantly, the medical record before the ALJ following remand stopped in March 2005. Indeed, at the hearing, the medical expert specifically questioned the lack of updated records, asking "why is it that we have no records for the past three years?" (A.R. 439.) The ALJ asked plaintiff's counsel about the lack of updated records, and counsel responded that he had requested them from "the county two months ago" but had not received them. (*Id*.) The medical evidence of record indicated that plaintiff's lower extremity orthopedic impairments may have been getting worse. Three and a half years after Dr. Ella-Tamayo rendered her consultative opinion, Dr. Jamil found more restrictive limitations warranted, and in the intervening years, x-rays and an MRI repeatedly showed degenerative changes in plaintiff's knees. Given the lack of updated medical records for the three years preceding the 2008 hearing, and the ALJ's professed inability to understand the nature and scope of Dr. Jamil's "frequent rests" limitation, it was incumbent upon the ALJ to obtain some clarification of Dr. Jamil's opinion rather than just deferring to Dr. Lorber's testimony.

Given the 2007 Order's directive that the ALJ appropriately consider Dr. Jamil's "frequent rests" limitation on remand, "including [conducting] any further proceedings . . . as may be needed" (A.R. 479)), the ALJ's rejection of this portion of Dr. Jamil's opinion without first attempting to obtain clarification was improper. The ALJ, thus, failed to comply with the 2007 Order in this respect. The Court cannot find this error be harmless.

In the 2007 Order, the Court noted that, at the 2005 hearing, the ALJ propounded a hypothetical to the vocational expert positing a sedentary level of work and that the claimant would be "off task 20 percent of the time due to" orthopedic and/or focus/concentration problems; in response, the vocational expert opined that there is no work that could be performed by the claimant. (A.R. 418, 478.)  The Court observed that it was unclear whether or not the "off task" limitation included in the hypothetical correlated to Dr. Jamil's "frequent rests" limitation.  (A.R. 478.)  At the 2008 hearing, the vocational expert testified that, based on Dr. Lorber's RFC opinion, there were light, unskilled positions available that plaintiff could perform.  The ALJ then asked the vocational expert to assume that the claimant would be "off task at least 20% of the time due to pain," and the vocational expert responded that "there would not be any work," because the claimant would not be "working at a competitive rate for full-time employment."  (A.R. 449-50.)  Once again, it is unclear whether the ALJ's "off task" reference was intended to encompass Dr. Jamil's "frequent rests" limitation or not; if it was, then the ALJ's error plainly was not harmless.

Accordingly, the Court finds that the ALJ did not comply with the 2007 Order with respect to the consideration of Dr. Jamil's lifting limitation and "frequent rests" limitation.  For the reasons set forth above, that error warrants reversal.

///

///

///

///

II.  <u>The ALJ Did Not Properly Consider The Medical Expert's</u>
<u>Testimony Indicating That Plaintiff Met Or Equaled A Listing</u>
<u>For A Closed Period</u>.

At the 2008 hearing, the ALJ asked Dr. Lorber:  "[B]ased on the records that you have reviewed, do you have an opinion as to whether during the time frame after 4-27-01 up to and including today, whether the claimant met or equaled a listing?"  (A.R. 440.)  Dr. Lorber responded:  "Between the onset of April 27 '01 and April of '02 she met listing 1. [*sic*], 11.04 peripheral neuropathy regarding bilateral carpal tunnel syndrome.  Subsequent to that she no longer met or equaled a listing."  (*Id.*)  In his 2008 decision, the ALJ stated that Dr. Lorber had opined that plaintiff "may have met a listed impairment but did not satisfy the durational one year period."  (A.R. 433.)

Plaintiff contends that the ALJ misstated Dr. Lorber's testimony, because Dr. Lorber's testimony indicated a finding that, "for at least a 12 month period of time from April of 2001 through April of 2002 this Plaintiff met listing 11.04 regarding her upper extremity impairments."  (Joint Stip. at 5.)  Defendant argues that Dr. Lorber did not testify that plaintiff met the indicated listing "for the <u>entire</u> period from April 2001 to April 2002, but simply that she met a listing <u>between</u> those dates."  (*Id.* at 11; emphasis in original.)  Defendants cites portions of the medical evidence and asserts that:  plaintiff did not complain of bilateral wrist pain until May 16, 2001, had carpal tunnel release surgery on March 6, 2002, and had her sutures removed on March 22, 2002; and thus, her disabling condition lasted only from May 16, 2001, through March 22, 2002, which was less than 12 months.  (*Id.*)

27

Defendant's argument fails for several reasons.  First, defendant overlooks the fact that these same medical records show that, on April 10, 2001, plaintiff complained to her treating physician of "numbness and tingling of both hands." (A.R. 207.)  She returned for a follow-up visit on May 16, 2001, at which time she again complained of bilateral numbness and tingling, as well as wrist and hand pain.  (A.R. 206.)  When plaintiff did have her surgery sutures removed on March 22, 2002, her impairment did not disappear at that moment *ipso facto*.  Plaintiff still complained of throbbing pain as of that date, and her medical notes indicate that she should return in a month for a re-check to determine whether she had the full use of her hands. (A.R. 257.)  On April 23, 2002, plaintiff reported to her treating physician that she was experiencing right wrist swelling and pain.  (A.R. 256.)  In short, defendant's argument that plaintiff's carpal tunnel-based impairment lasted for less than 12 months is not supported by the record.

Even if defendant's argument did not fail factually, it would fail legally, because it rests on an improper post hoc rationale.  The ALJ did not cite the medical evidence on which defendant relies to support his step three finding; rather, the ALJ relied only on his above-quoted description of Dr. Lorber's testimony.  A reviewing court cannot affirm the denial of benefits based on a reason not stated or a finding not made by the ALJ, and the Commissioner's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing.  *See, e.g.*, Connett, 340 F.3d at 874; Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)(an agency decision cannot be affirmed on the basis of a ground the agency did not invoke in making its decision); Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n. 2 (C.D. Cal.

28

1   1996)(remand is appropriate when a decision does not adequately explain
2   how a decision was reached, "[a]nd that is so even if [the Commissioner]
3   can offer proper post hoc explanations for such unexplained
4   conclusions," for "the Commissioner's decision must stand or fall with
5   the reasons set forth in the ALJ's decision, as adopted by the Appeals
6   Council")(citation omitted).

7

8        Regardless of the flaws in defendant's argument, the Court would be
9   constrained to find error, because the ALJ mischaracterized Dr. Lorber's
10  testimony.   Dr. Lorber did not testify, as the ALJ asserts, that
11  plaintiff "did not satisfy the durational one year period." (A.R. 433.)
12  Rather, Dr. Lorber simply stated that plaintiff met or equaled a listing
13  "[b]etween" April 27, 2001, and April 2002, but thereafter, she did not.
14  (A.R. 440.)   While Dr. Lorber's testimony regarding the specific
15  beginning and end dates of plaintiff's listed impairment is imprecise,
16  it is unlikely that he meant that she met or equaled the listing for
17  less than a year's time, given his failure to so indicate and his
18  clarification that, after April 2002, she no longer met or equaled the
19  listing.   The only reasonable interpretation of Dr. Lorber's testimony
20  is that plaintiff met or equaled listing 11.04 through April 2002, which
21  would satisfy the 12 month durational requirement.

22

23       The ALJ's characterization of Dr. Lorber's testimony in this
24  respect was error.   *See* Reddick v. Chater, 157 F.3d 715, 722-723 (9th
25  Cir. 1998)(misleading paraphrasing of the record constitutes error, and
26  it is impermissible for the ALJ to develop an evidentiary basis by "not
27  fully accounting for the context of materials or all parts of the
28  testimony and reports").   Although the ALJ was prepared to rely

exclusively on Dr. Lorber's testimony to the extent it supported a less restrictive RFC than that which the ALJ previously found to be supported by the evidence of record, the ALJ inexplicably, and impermissibly, rejected the one aspect of Dr. Lorber's testimony that was substantially favorable to plaintiff.  The ALJ was not permitted to cull only those portions of Dr. Lorber's opinion that the ALJ wished to utilize to support his decision.  *See id.*  Given that Dr. Lorber's testimony, if properly construed, required finding plaintiff to have been disabled for a closed one-year period, the ALJ's error cannot be considered harmless.

III. <u>Remand For Both The Payment Of Benefits For A One Year Closed Period Of Disability And Further Proceedings Is Appropriate</u>.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Plaintiff asserts that this matter should be remanded to the Commissioner for further proceedings, namely, for a proper consideration

30

and resolution of the foregoing issues.  (Joint Stip. at 13.)  The Court concludes that there is no reason to remand this case for further administrative proceedings with respect to the closed period identified by Dr. Lorber.   Given Dr. Lorber's uncontradicted testimony that plaintiff met or equaled listing 11.04 from April 27, 2001, through April 2002, and the substantial evidence of record supporting that conclusion (*see discussion supra* at p. 28, lns. 5-19), the Court finds that plaintiff was disabled throughout that closed period.  Accordingly, a reversal and remand for an award of benefits for that closed period is warranted.

However, with respect to the claim period after April 2002, a remand for further proceedings is appropriate, so that the ALJ may rectify the above-mentioned deficiencies and errors.[16]  On remand, the ALJ should attempt to recontact Dr. Jamil for clarification of the "frequent rests" limitation he found warranted.  If such clarification is obtained, the ALJ must properly consider Dr. Jamil's opinion, and accord it the appropriate weight vis-a-vis Dr. Lorber's testimony, when assessing plaintiff's RFC.  If such clarification cannot be obtained, a new consultative examination should be ordered for the limited purpose of determining whether a "frequent rests" limitation is required.  The ALJ also must properly consider the lifting limitation propounded by Dr.

---

[16]   The Court reaches this conclusion somewhat reluctantly.   It has been nine years since plaintiff filed her SSI application.  Although this matter was remanded for the consideration of only two limited issues, the ALJ failed to comply with the 2007 Order and the directive of the Appeals Council that he do so.  With that said, it is not clear to the Court that, if the ALJ had complied with the 2007 Order, a finding of disability would have been required with respect to the closed period of disability.   Accordingly, and given that plaintiff herself seeks a remand for further proceedings, that remedy appears to be the appropriate one here.

Jamil, and accord it the appropriate weight vis-a-vis Dr. Lorber's testimony, when assessing plaintiff's RFC.   Should further testimony from a vocational expert be adduced, the hypothetical(s) posed to the vocational expert must clearly and accurately reflect all of the limitations determined by the ALJ to affect plaintiff's ability to work.

### CONCLUSION

Accordingly, for the reasons stated above, the Commissioner's decision is REVERSED, and this case is remanded to the Commissioner for the further proceedings specified above, including the payment of benefits for the closed period.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   September 30, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE